Charles M. Stern (Cal. Bar No. 43870)
Daniel M. Pelliccioni (Cal. Bar No. 152074)
KATTEN MUCHIN ZAVIS ROSENMAN
2029 Century Park East, Suite 2600
Los Angeles, California 90067-3012
tel: (310) 788-4400 fax: 310-788-4471

Attorneys for defendant MITSUBISHI ELECTRIC
AND ELECTRONICS USA, INC.

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>MICROAGE, INC. *et al.*,<br><br>            Debtors<br>_____<br>MICROAGE, INC. *et al.*,<br><br>            Plaintiffs,<br><br>vs.<br><br>MITSUBISHI ELECTRIC AND<br>ELECTRONICS USA, INC. *et al.*,<br><br>            Defendants | In Proceedings Under Chapter 11<br><br>No. 00-03833-ECF-CGC<br><br>Adversary Proceeding No. 02-311<br><br>NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CARL CARLSON |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

    Notice is hereby given defendant MITSUBISHI ELECTRIC AND ELECTRONICS USA, INC. ("MELA") hereby moves for partial summary judgment with respect to the claims in the Complaint that allege use of credits by plaintiffs as the basis for recovery of preferential transfers and setoffs.

    The motion is made pursuant to Bankruptcy Rule 7056 and Rule 56 F.R.C.P. on the following grounds:

(a) With respect to the MELA credit memos used by plaintiffs, plaintiffs cannot prove an essential element of their claim under section 547(b) of the Bankruptcy Code, namely, that there was a transfer of an interest of the debtors in property.

(b) With respect to the MELA credit memos used by plaintiffs, plaintiffs cannot prove an essential element of their claim under section 547(b)(1) of the Bankruptcy Code, namely, that the alleged transfers were to or for the benefit of a creditor.

(c) With respect to the MELA credit memos used by plaintiffs, plaintiffs cannot prove an essential element of their claim under section 547(b)(5) of the Bankruptcy Code, namely, that the credits taken by the debtors in payment of MELA invoices enabled MELA to receive more than it would receive in a Chapter 7 case if the credits had not been taken.

(d) With respect to the MELA credit memos used by plaintiffs, plaintiffs cannot prove an essential element of their claim under section 553(b)(1) of the Bankruptcy Code, namely, that MELA offset a mutual debt owing to the debtors against a claim against the debtors.

(e) MELA is entitled to judgment with respect to the credits alleged in Count One and Count Two of the Complaint.

The motion is based on this notice and the accompanying Memorandum of Points and Authorities and Declaration of Carl Carlson.

Dated: Sept ___, 2002

KATTEN MUCHIN ZAVIS ROSENMAN

By _____
Charles M. Stern

Attorneys for defendant MITSUBISHI ELECTRIC AND ELECTRONICS USA, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The transactions at issue in this action involved the sale of computer monitors to plaintiffs and the payment for those goods pursuant to invoices sent by the vendor, Mitsubishi Electronics America, Inc. ("MELA"), the predecessor-in-interest of defendant Mitsubishi Electric and Electronics USA, Inc. As described in the accompanying declaration of Carl Carlson, MELA first sold its goods to plaintiff MicroAge, Inc., then to its subsidiary, plaintiff Pinacor, Inc.; MELA issued credit memos against various invoices and plaintiffs used the credit memos to reduce the payments they made on the invoices.

The Complaint asserts claims for recovery of preferential transfers under section 547(b) of the Bankruptcy Code and for recovery of offsets under section 553(b)(1). According to the Complaint, the "transfers" at issue were eight checks to MELA and the use by plaintiffs of a number of "credits" (¶ 10, Ex. 1) and the "credits" also constituted the offset of mutual debts (¶ 19, Ex. 1). As a matter of law, plaintiffs' use of the MELA credit memos cannot possibly constitute preferential transfers or offsets by MELA; accordingly, partial summary judgment is appropriate as to the credits.[1]

## I. SUMMARY JUDGMENT IS APPROPRIATE AS TO TRANSACTIONS THAT CANNOT, AS A MATTER OF LAW, CONSTITUTE VOIDABLE PREFERENCES OR OFFSETS.

An essential element of plaintiffs' preference claim is that there be a "transfer of an interest of the debtor in property." 11 U.S.C. § 547(b). Plaintiffs have the burden of proof as to each element of an alleged preferential transfer, 11 U.S.C. § 547(g); for purposes of summary judgment, MELA need only show that no genuine issue of material fact exists, In re Schwinn Bicycle Co., 182 B.R. 514 (N.D. Ill. 1995). Whether and when there has been a "transfer" within the ambit of section 547(b) is

---

[1] By putting aside the eight checks for purposes of this motion, MELA does not concede that plaintiffs have a right to recovery as to any of those payments. The checks raise issues different from those addressed here.

determinable by summary judgment. In re Roy Young, Inc., 66 B.R. 16, 18-19 (W.D. La. 1986). Summary judgment in a preference action is appropriate where an affidavit (or declaration) proffers the documents establishing the nature of the underlying transaction and only one conclusion can be drawn from such evidence. *See, e.g.*, In re Southern Indus. Banking Corp., 189 B.R. 697, 703-704, 705-707 (E.D. Tenn. 1992).

Similarly, if the credits taken by plaintiffs to reduce their payments to MELA cannot, as a matter of law, be considered offsets, summary judgment is appropriate as to the section 553(b)(1) claim as well, to the extent it rests on the credits.

II.  PLAINTIFF CANNOT PROVE ESSENTIAL ELEMENTS OF THEIR CLAIM THAT THE CREDITS IN QUESTION CONSTITUTED PREFERENTIAL TRANSFERS.

A.  A CREDIT TAKEN BY A VENDOR AGAINST A PURCHASE INVOICE IS NOT A "TRANSFER OF AN INTEREST OF THE DEBTOR IN PROPERTY."

It is elementary that a claim under section 547(b) of the Bankruptcy Code must establish first that the transaction to be avoided was a "transfer of an interest of the debtor in property."[2] "Transfer" is defined in the Bankruptcy Code as every mode "of disposing of or parting with property or with an interest in property. . . ." 11 U.S.C. § 104(54) (emphasis added). A credit memo is neither "property" nor "an interest in property"–the credit is merely a right to reduce the debtor's obligation on the unpaid invoice.[3] "The essence of a transfer is the relinquishment of a valuable property right." In re Commodity Merchants, Inc., 538 F.2d 1260, 1263 (7th Cir. 1976) (emphasis added; citations omitted).

---

[2]  The Complaint here (¶ 10-16) merely alleges that the specified transactions were "Transfers," not that they were transfers of interests of the debtors in property.

[3]  If, as plaintiffs allege (Complaint, Count Two), the credits in question constituted "setoffs" under section 553(b) of the Bankruptcy Code, they could not be "transfers." The Bankruptcy Code intentionally omits "setoffs" from the definition of "transfer." 5 Collier on Bankruptcy ¶ 553.09[1][a] (15th ed. 2002). Thus, a "setoff" is not preferential because no "transfer" takes place. In re Madcat Two, Inc., 127 B.R. 206, 209 n.3 (Bankr. E.D. Ark. 1991).

A debtor does not relinquish value by using a non-transferable credit memo, it <u>obtains</u> value. The Ninth Circuit's recent explanation of "transferee," in <u>In re Cohen</u>, 2002 WL 1902318, * 3 (9th Cir. 2002), makes it abundantly clear that MELA was not a transferee of anything of value to it and that as a consequence no "transfer" was involved in plaintiffs' use of a MELA credit memo.

> "While the term transferee is not defined by the Bankruptcy Code, it is generally accepted that a transferee is one who, at a minimum, has 'dominion over the money or other asset, the right to put the money to one's own purposes. In practical terms, the 'dominion test' requires that a transferee be 'free to invest the whole [amount] in lottery tickets or uranium stocks. Dominion is therefore akin to legal control (e.g., the right to invest the funds as one chooses), not mere possession." (Citations omitted.)

In <u>Commodity Merchants</u>, *supra*, the debtor ("CMI") had entered into commodity futures contracts with Archer-Daniels-Midland Co., Inc. ("ADM"); when CMI experienced financial travail, ADM cancelled four outstanding contracts under which CMI was the purchaser, and ADM the seller, of commodities. Some days later, CMI was adjudicated bankrupt. Rejecting the bankruptcy trustee's claim that the CMI estate had been deprived of executory contracts (*i.e.*, the four cancelled commodities contracts), the bankruptcy court found no evidence of a transfer of property of CMI (538 F.2d at 1263). The district court and the court of appeals affirmed. First, "when ADM cancelled the four contracts, there was no transfer of CMI's property" (538 F.2d at 1263). Second, the contracts were not freely transferable prior to cancellation and had no market value (538 F.2d at 1263-1264). "There being no transfer of CMI's property to ADM, of course there was no preferential transfer to ADM on account of an antecedent debt . . ." (538 F.2d at 1264). Here, MELA received no transfer when plaintiffs deducted various credits from the MELA invoices; furthermore, those credits were not transferable to other parties and therefore did not represent value that could have been realized by satisfying debts other

than those owed to MELA. Just as ADM relinquished its right to collect on the contracts it cancelled in Commodity Merchants, MELA relinquished, *pro tanto*, its right to collect on the invoices against which it issued credit memos. In neither case did the creditor receive a transfer, let alone a preferential transfer.

B. THE CREDITS IN QUESTION WERE NOT TO OR FOR MELA'S BENEFIT.

Subsection (1) of section 547(b) requires that a preferential transfer be "to or for the benefit of a creditor." Because, as explained above, MELA received nothing of value as a "transferee" of the credits in question and the credits taken by plaintiffs benefitted them, not MELA, this element of the statute cannot be met.

C. THE CREDITS IN QUESTION DID NOT PERMIT MELA TO RECEIVE MORE THAN IT WOULD IN A CHAPTER 7 CASE.

Another essential element of a voidable preference is that the alleged transfer enables the creditor to receive more than it would if the case were one under Chapter 7, the alleged transfer had not been made and the creditor received payment on its claim as permitted by the Bankruptcy Code. 11 U.S.C. § 547(b)(5). Common sense dictates the conclusion that a credit memo used by a debtor to reduce the cash paid to a creditor cannot constitute such a benefit to the creditor. The credit cannot be used to satisfy other obligations of the debtor; it can only be used to reduce the debtor's obligation to the particular creditor that issued the invoice creating the debt. If a debtor were to dispute the full amount due under an unpaid invoice, by asserting defective goods or late delivery, for example, a settlement payment for less than 100% of the invoice would not involve a "transfer of property" from the debtor to the creditor/vendor in the amount of the agreed discount; the debtor has merely asserted a right or defense to reduce its liability. Moreover, giving effect to the credit does not prejudice other creditors (the essence of a preferential transfer); in fact, it <u>benefits</u> other creditors. Assume an outstanding invoice to the debtor in the amount of $1000: the unsecured creditor that issued the invoice

will file a proof of claim for $1000. But if it is determined, or the creditor acknowledges, that a credit was given, and used, in the amount of $200, the claim is then reduced to $800, leaving $200 more in the pool of assets to be distributed to other unsecured creditors.

By reducing the amount of money paid to MELA, plaintiffs effected a result whereby MELA received less, not more, than it would receive in a Chapter 7 liquidation.

III. THE MELA CREDIT MEMOS CANNOT BE DEEMED SETOFFS UNDER SECTION 553(b)(1) OF THE BANKRUPTCY CODE.

A. ANY SETOFF WAS ASSERTED BY PLAINTIFFS, NOT MELA.

Section 553(b)(1) only applies "if <u>a creditor</u> offsets a mutual debt owing to the debtor against a claim against the debtor. . ." (emphasis added). Before there can be a setoff, "affirmative acts must be taken by the creditor which indicate a clear intent to setoff." In re Bohlen Enter., Ltd., 78 B.R. 556, 559-560 (Bankr. N.D. Ia.), *aff'd*, 91 B.R. 486 (N.D. Ia. 1987), *rev'd on other grounds*, 859 F.2d 561 (8th Cir. 1988). In other words, setoff, in the bankruptcy context, is a right that must be asserted by the creditor. In re Blanton, 105 B.R. 321 (Bankr. E.D. Va. 1989).[4] See also In re McCormick, 5 B.R. 726, 730 (Bankr. N.D. Ohio 1980). Here, it was plaintiffs, not MELA, that used the credit memos to reduce, or "offset," the indebtedness between the parties. MELA never invoked any transaction, let alone any "mutual debt owing to [plaintiffs]," as a setoff to the debt owed MELA as represented by its unpaid invoices. The Carlson declaration establishes that plaintiffs unilaterally decided to use the credits to pay down the indebtedness represented by the unpaid MELA invoices.[5] The inaction of a creditor prior

---

[4] That the creditor must assert the offset is evident from subsection (a) of the statute, which affirms the "right of a creditor to offset a mutual debt owing by such creditor to the debtor, that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . . ." 11 U.S.C. § 553(a).

[5] Plaintiffs's check stubs listed the particular credit memos as amounts used to reduce the net payments of the remittance checks (Carlson decl. ¶ 6).

to the filing of a bankruptcy petition cannot constitute the "making of a setoff under § 553(b) of the Bankruptcy Code." In re Northwest Elec. Co., 81 B.R. 392, 394 (Bankr. W.D. Pa. 1988).

B.  THERE WERE NO MUTUAL DEBTS RESULTING IN A SETOFF.

Invoking section 553(b) of the Bankruptcy Code, Count Two of the Complaint alleges that MELA "offset a mutual debt owing to MicroAge against the claim against MicroAge" (¶ 19). Just as plaintiffs' use of the MELA credit memos cannot be considered transfers of an interest of the debtor in property, it cannot be deemed to involve "mutual debt[s] owing to the debtor" within the meaning of section 553(b)(1).

The purpose of section 553(b)(1) is simple: subject to certain limitations, it permits a creditor who is also indebted to the bankruptcy debtor to "net out" its claim against the debtor, thus avoiding an unnecessary claim against it by the trustee or debtor-in-possession. A further purpose of the bankruptcy setoff provisions is "to remedy the unfairness perceived in requiring a creditor to pay his debts in full to the bankrupt, while granting the creditor only a percentage of debts owed him by the bankrupt." In re Anchorage Int'l Inn, Inc., 16 B.R. 308, 313 (Bankr. D. Alaska 1981). Neither purpose is implicated here. MELA never owed money to plaintiffs; at all relevant times, they owed MELA for unpaid invoices and this was the only indebtedness that ever arose between the parties.[6/] The analogy set out in section II.C. above is illustrative here, also: where an unpaid vendor agrees to reduce the amount due because of defective goods or late delivery, it does not become indebted to the purchaser for the difference and there is no "mutual debt." Before and after the reduction or credit, the only indebtedness runs from the purchaser to the vendor. In the same vein, there is no "mutual debt" where a retailer uses newspapers or direct mail to distribute coupons to consumers; when a consumer buys the

---

[6/]  Plaintiffs allege that MELA "offset a mutual debt owing to MicroAge . . . as credits" (¶ 19). This conclusory allegation must be disregarded, in light of the facts set forth in the Carlson declaration.

product, he or she is the sole debtor and the only effect of the coupon is to reduce the debt he or she owes for the goods.

CONCLUSION

There is simply no tenable theory by which plaintiffs can recover for alleged preferential transfers that were merely credits taken as deductions from payments for goods sold. MELA is entitled to partial summary judgment, declaring the credits listed on Exhibit A to the Complaint were not "transfers," and do not provide the basis for any claim under section 547(b) of the Bankruptcy Code, and were not "offsets" under section 553(b).

Respectfully submitted,

KATTEN MUCHIN ZAVIS ROSENMAN

By _____
Charles M. Stern

Attorneys for defendant MITSUBISHI ELECTRIC AND ELECTRONICS USA, INC.