Donald L. Gaffney (#005717)
Steven D. Jerome (#018420)
Joe T. Stroud, III (#020296)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: 602-382-6000
Facsimile: (602) 382-6070
Attorneys for Plaintiff

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>MicroAge, Inc., a Delaware corporation, et al.,<br><br>Debtors.<br><br>EIN or SSN: 86-0321346 | Proceedings Under Chapter 11<br><br>Case No. 00-03833-ECF-CGC |
| MICROAGE, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MITSUBISHI ELECTRIC AND ELECTRONICS USA, INC. and ABC CORPORATIONS 1-10,<br><br>Defendants. | Adversary No. 02-311<br><br>**PLAINTIFF'S OPPOSITION TO MITSUBISHI ELECTRIC AND ELECTRONICS USA, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Relates to DE# 5 and 6] |

MicroAge, Inc., the reorganized and consolidated Debtor ("MicroAge"), by and through its undersigned counsel, hereby responds to Mitsubishi Electric and Electronics USA, Inc.'s ("Mitsubishi") "Motion for Partial Summary Judgment" ("Motion") and requests that the Court deny the Motion for the reason that genuine issues of material fact exist and Mitsubishi is not

1253990.1

entitled to relief as a matter of law. This Response is supported by the accompanying Memorandum of Points and Authorities and "<u>MicroAge's Contravening Statement of Facts in Support of Opposition to Mitsubishi Electric and Electronics USA, Inc.'s Motion for Partial Summary Judgment</u>" both of which are incorporated herein by this reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. BACKGROUND**

On April 12, 2002, MicroAge filed its "<u>Complaint to Avoid and Recover Preferential Transfers and Preferential Setoffs</u>" from Mitsubishi. In the Complaint, MicroAge alleged that Mitsubishi received eight checks totaling $828,603.21, and $333,948.31 in the form of redeemed credits, from MicroAge during the preference period. Further review of MicroAge's records reveals that Mitsubishi received $262,856.00 in redeemed credits from MicroAge during the preference period, not $333,948.31 as originally believed. The credits redeemed are noted on the eight checks delivered to Mitsubishi during the preference period ("Redeemed Credits").

In addition, Mitsubishi issued MicroAge $1,335,904.00 in credits that MicroAge has not redeemed. Further discovery is needed to determine whether Mitsubishi applied any or all of these additional credits during the preference period to reduce MicroAge's prepetition debt.

Mitsubishi issued the credits pursuant to several different programs and policies which are contained in several different written agreements. These programs and policies include the Electronics Distributor Cooperative Advertising Plan, the Price Protection Credit Program, the product rejection and return policy, and a rebate program. Further discovery is needed pursuant to RULE 56(f), FEDERAL RULE OF CIVIL PROCEDURE, made applicable to this proceeding by RULE 7056(f), FEDERAL RULE OF BANKRUPTCY PROCEDURE ("Rule 56(f)"), to determine which credits were issued pursuant to each program and policy. MicroAge does not have copies of all of the applicable agreements. Further discovery will be needed to obtain copies of those agreements to determine how each type of credit is treated pursuant to the agreements.

By its Complaint, MicroAge seeks to recover the amount transferred to Mitsubishi by the

eight checks and the Redeemed Credits pursuant to 11 U.S.C. § 547 because MicroAge transferred the checks and credits, which otherwise would have constituted property of MicroAge's bankruptcy estate, to Mitsubishi during the ninety (90) days before MicroAge filed its bankruptcy petitions, thereby enabling Mitsubishi to receive more than it would have received in a Chapter 7 liquidation had the transfers not occurred. Alternatively, MicroAge seeks to recover from Mitsubishi the amount by which Mitsubishi improved its position during the preference period by setting off the Redeemed Credits against the debt owed to it by MicroAge.

On or about September 10, 2002, Mitsubishi filed its motion for partial summary judgment arguing that MicroAge cannot recover the value of the credits under sections 547 or 553. Mitsubishi argues that MicroAge cannot satisfy its burden under section 547 to show that (i) there was a transfer of an interest of the debtors in property, (ii) that any such transfer was for Mitsubishi's benefit, or (iii) that Mitsubishi received more than it would have received in a Chapter 7 case. The other elements of section 547 are not disputed. In addition, Mitsubishi argues that it was not preferred under section 553(b) because (i) any setoff was exercised by MicroAge, not Mitsubishi, and (ii) there is no mutual debt.

Mitsubishi's motion must fail because (i) material facts are genuinely disputed and further discovery is required pursuant to Rule 56(f) to enable MicroAge to fully respond to the Motion, and (ii) Mitsubishi is not entitled to judgment as a matter of law.

## II. ARGUMENT

Mitsubishi's motion must be denied because: (i) material facts are in dispute, which bar the relief requested by Mitsubishi, and (ii) following further discovery pursuant to Rule 56(f), MicroAge will meet its burdens under section 547 or section 553 so that Mitsubishi is not entitled to judgment as a matter of law.

### A. **Material Facts Are In Dispute**

Mitsubishi has failed to demonstrate that it is entitled to summary judgment. It is well settled that a party seeking summary judgment must establish that there are no material facts in

1253990.1

- 3 -

dispute and that the moving party is entitled to judgment as a matter of law. RULE 56(c), FEDERAL RULES OF CIVIL PROCEDURE. Many of the facts that Mitsubishi relies upon in support of its Motion are subject to genuine dispute.

The entire basis of Mitsubishi's motion for partial summary judgment is that a credit is not "property" or an "interest in property" because, it alleges, a credit is merely a right to reduce the debtor's obligation on an unpaid invoice and, therefore, has no value. (Mot. at p. 2, line 19-21.) Because of this, Mitsubishi goes on to argue that it never owed MicroAge anything for the credits and, therefore, there was no mutual debt to setoff under section 553. Assuming *arguendo* that Mitsubishi is correct that a right to reduce an obligation is not a property interest and has no value, a genuine issue of fact exists as to whether the Redeemed credits were, in fact, merely a right to reduce MicroAge's obligation on the unpaid invoices.

Section 2 of the Terms and Conditions of the Distributor Cooperative Advertising Agreement between Mitsubishi and MicroAge provides that credits issued to MicroAge thereunder will be used toward future purchases of Mitsubishi products <u>or</u>

> if [Microage] is no longer, at the time such credit arises, an Authorized Buyer of MELA brand name products, [MicroAge] will be **reimbursed therefore in cash** if [MicroAge] is not then indebted to [Mitsubishi], has no undelivered orders at such time, and the qualified advertising occurred while [MicroAge] was still an Authorized Buyer of MELA brand name peripheral products. ADVERTISING AND PROMOTION CLAIMS ARE NOT TO BE DEDUCTED FROM INVOICES.

SOF ¶ 7.

Thus, Mitsubishi's own credit policy contradicts its allegation. Use of the cooperative advertising credits are <u>not</u> limited to reducing an obligation owing on an outstanding invoice. To the contrary, the contract provides that they <u>cannot</u> be used for that purpose. Rather, the contract provides that the credits can be used <u>only</u> to purchase new product from Mitsubishi if the buyer is still an authorized buyer, or, if the buyer is no longer an authorized buyer, the credits will either be (i) reimbursed to the buyer in cash, or (ii) used to offset any amounts owing to Mitsubishi from

1253990.1
- 4 -

the buyer. It cannot be contested that a credit that will either be used to buy product, be reduced to cash, or be used to offset a debt is the equivalent of cash; and cash has value.

Mitsubishi's allegation that the credits can only be used to reduce the buyer's obligation on an invoice is also contradicted by Article VII of the Mitsubishi Electronics Brand Name Distributor/Reseller Purchase Agreement ("Distributor Agreement"). Article VII of the Distributor Agreement provides that all invoices must be paid in cash. Even more, it specifically provides that "Buyer shall have no right to take any deductions from or make any off-sets against any MELA invoice, even for credits or other amounts owing to Buyer from MELA, without MELA's prior written approval." SOF ¶ 11. Thus, while Mitsubishi alleges the credits were available only to reduce the buyer's obligation on an invoice, the Distributor Agreement appears to militate against such use. The Distributor Agreement prohibits reducing the obligation owing on an invoice by credits, except when Mitsubishi specifically allows such use.

Instead, Article VII supports a finding that the credits are cash equivalents owed by Mitsubishi to MicroAge. Article VII equates credits with "other amounts owing to buyer from [Mitsubishi]." Stated another way, Article VII recognizes that a credit is a pecuniary obligation Mitsubishi owes to the buyer. Furthermore, though payment through the offset of credits is not preferred, it is permitted with Mitsubishi's prior authorization. If credits were not cash equivalents, the requirement that all payments be in cash would be completely superfluous.

The Distributor Agreement does not address what happens to a credit when it is not used to buy Mitsubishi product before the business relationship between the buyer and Mitsubishi ends. Mitsubishi alleges that the obligation simply evaporates. However, the Distributor Agreement does not so state and the Cooperative Advertising Agreement provides that, at least the credit provided thereunder, is redeemed in cash or used to offset any of the buyer's remaining debt to Mitsubishi. MicroAge disputes that the credits owed to it by Mitsubishi merely evaporated when it filed bankruptcy.

Thus, genuine disputes exist as to the proper interpretation of the agreements, the

1253990.1

- 5 -

available uses of the credits, whether the credits contain value, and whether Mitsubishi owes that value to MicroAge. In addition, further discovery is required pursuant to Rule 56(f) to determine how Mitsubishi, in fact, treated and accounted for the credits issued to MicroAge, and how it treats and accounts for credits issued to other buyers.

**B. MicroAge Can Prove Each Element of Section 547 or Section 553(b)**

At trial MicroAge will prove that the Redeemed Credits are preferential transfers pursuant to section 547, or, in the alternative, that Mitsubishi improved its position during the preference period when it applied the Redeemed Credits to offset MicroAge's prepetition debt. Pursuant to 11 U.S.C. § 550, MicroAge is entitled to recover the preferential transfer from Mitsubishi for the benefit of the creditors of MicroAge's estate.

1. Section 547

Contrary to Mitsubishi's assertions, MicroAge did have a property interest in the credits, the transfer of the credits did benefit Mitsubishi, and the transfer enabled Mitsubishi to receive more than it would have in a Chapter 7 liquidation if the transfers had not been made. Because Mitsubishi does not dispute that the other elements of section 547 are satisfied, its Motion for partial summary judgment must fail.

a. *The Credits Are Property or a Property Interest*

As the agreements between MicroAge and Mitsubishi make clear, credits can be used for a number of purposes depending upon the circumstances that exist at the time they are redeemed. The credits can be used to buy additional product, to offset a mutual debt, or they can be redeemed for cash. So long as MicroAge was an authorized buyer of Mitsubishi product, the credits were to be used by MicroAge to buy product from Mitsubishi. Those products, in turn, became part of MicroAge's inventory. Ultimately, MicroAge sold the inventory in exchange for cash. Because MicroAge could use these credits to obtain inventory, and ultimately cash, they constitute a valuable asset to MicroAge; had they not been transferred to Mitsubishi prepetition, they would have been valuable property of MicroAge's estate.

1253990.1

- 6 -

11 U.S.C. § 541 defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." The concept of property of the estate under this section is an expansive one. In re Food & Fibre Protection, Ltd., 168 B.R. 408, 417 (Bankr. D. Ariz. 1994) (Case, J.) (citing Begier v. I.R.S., 496 U.S. 53, 58-59, 110 S. Ct. 2258, 2262-63, 110 L. Ed. 2d 46 (1990)). State law determines the nature and extent of a debtor's interest in property. Dumas v. Mantle (In re Mantle), 153 F.3d 1082, 1084 (9th Cir. 1998). The Arizona Supreme Court has defined "property" as "any vested right of any value." Aranda v. Industrial Comm'n of Az., 198 Ariz. 467, 471, 11 P.3d 1006, 1010 (2000). A property right vests when every event has occurred that needs to occur to make the implementation of the right a certainty. Id.

With respect to the Redeemed Credits, every event had occurred to give MicroAge a vested right in the credits. The credits were issued to MicroAge pursuant to Mitsubishi's programs and policies. MicroAge could have used those credits to purchase additional Mitsubishi product, but chose instead to apply the credits toward payment of invoices. As such, MicroAge transferred a property interest to Mitsubishi when it redeemed the credits to reduce the outstanding obligation.

Mitsubishi argues that the credits cannot constitute a property interest because they were not freely transferable, and cites a 1976 case decided by the Seventh Circuit Court of Appeals, Allan v. Archer-Daniels-Midland Co. (In re Commodity Merchants), 538 F.2d 1260, for support. Commodity Merchants, however, was a case decided under the former Bankruptcy Act of 1898, when section 70(a)(5), the predecessor of section 541, included in the estate "rights of property, which prior to the filing of the petition [the bankrupt] could by any means have *transferred.*" (Emphasis added.) As the Seventh Circuit later pointed out in 1993, "the new Bankruptcy Code changed the legal landscape by dramatically expanding the definition of property included in the estate. In re Hunter, 970 F.2d 299, 302 (7th Cir. 1992). Section 541 *eliminated* the requirement that property must be transferable . . . in order to become initially part of the estate." In re Geise,

1253990.1

992 F.2d 651, 655 (emphasis added). Thus, the fact that the credits were non-transferable has absolutely no bearing on whether they constituted MicroAge's property or property of its estate. The Redeemed Credits were a valuable property right of MicroAge's that MicroAge transferred to Mitsubishi during the 90 days prior to MicroAge's bankruptcy when it redeemed the credits as payment for unpaid invoices. See Food & Fibre, 168 B.R. at 416 (finding that 11 U.S.C. § 101(54), which defines "transfer," encompasses every mode of parting with property or an interest in property.")

    b. *The Transfers Were for Mitsubishi's Benefit*

That the transfers were made for Mitsubishi's benefit is also easily satisfied. As made clear by the Cooperative Advertising Agreement, MicroAge could have (or, perhaps, should have) used the credits to buy Mitsubishi product, thus reducing the amount of product that Mitsubishi could sell to another buyer in exchange for cash. By redeeming the credits to pay invoices already owing instead of using them to buy new product, MicroAge enabled Mitsubishi to retain product that it could sell to a buyer capable of paying the resulting invoice in full.

    c. *The Transfers Enabled Mitsubishi to Receive More Than It Would In a Chapter 7 Case*

This latter point illustrates how the transfer of the credits to Mitsubishi enabled it to receive more than it otherwise would have received in a Chapter 7 liquidation. By using the credits to pay unpaid invoices, MicroAge enabled Mitsubishi to receive a dollar for dollar reduction of a portion of MicroAge's prepetition debt. It removed Mitsubishi's obligation to redeem the credits for product or cash. On the other hand, if this was a Chapter 7 liquidation, and the transfer had not occurred, then MicroAge's estate would have held at least $262,856.00 worth of credits that it could redeem for product or cash. In such a case, Mitsubishi would have had a greater claim against a MicroAge estate that had been enriched by $262,856.00 worth of product or cash. However, unsecured creditors of MicroAge's estate would not receive a 100% distribution. When the distribution is less than 100%, *any* payment "on account" to an unsecured

creditor during the preference period enables that creditor to received more than it would have received in liquidation had the payment not been made. In re Powerine Oil Co., 59 F.3d 969, 972 (9th Cir. 1995) (citation omitted.) Consequently, MicroAge can satisfy each element of section 547 and the transfer of the credits is avoidable as a preference pursuant to section 550. As such, Mitsubishi's motion for partial summary judgment must be denied.

2. Section 553(b)

Alternatively, if MicroAge's use of the credits to pay the unpaid invoices did not constitute a "transfer" within the meaning of section 547, then Mitsubishi's application of the credits to reduce MicroAge's prepetition debt constituted a setoff under 11 U.S.C. 553(a). As illustrated above, the credits represented a pecuniary obligation that Mitsubishi owed to MicroAge. Mitsubishi offset this prepetition debt to MicroAge against MicroAge's prepetition debt to Mitsubishi. Consequently, the requirements of mutuality are satisfied. Biggs v. Stovin (In re Luz Int'l, Ltd.), 219 B.R. 837, 843, 845 (9th B.A.P. 1998). Pursuant to sections 550 and 553(b), MicroAge can recover any improvement in position that Mitsubishi received by offsetting these debts during the preference period. Determining the amount subject to recovery is purely mathematical. See 11 U.S.C. § 553(b). Further discovery is required pursuant to Rule 56(f) to determine how many credits were applied by Mitsubishi to offset MicroAge's debt to it during the preference period.

Mitsubishi argues that section 553(b) does not apply because it alleges that MicroAge unilaterally invoked the setoff. Obviously, MicroAge does not have the power to unilaterally effect an offset. While MicroAge suggested that the debts be offset by noting the credits on the checks, MicroAge had absolutely no ability to cause Mitsubishi to actually offset the debts. That is an internal accounting function that only Mitsubishi could affirmatively accomplish. Further discovery is required pursuant to Rule 56(f) to determine how Mitsubishi treated MicroAge's suggestion of setoff in its books and records and determine whether Mitsubishi, in fact, effected the setoff of the prepetition debts. To the extent that Mitsubishi did, and enjoyed an

improvement in position as a result thereof, MicroAge is entitled to recover such improvement in position for the benefit of the creditors of its estate. Therefore, Mitsubishi's motion for summary judgment must be denied.

## III. CONCLUSION

Many of the facts necessary to determine whether MicroAge's notation of the Redeemed Credits constituted preferential transfers pursuant to either section 547 or section 553(b) are genuinely in dispute. Further discovery is required to resolve those disputes. Consequently, Mitsubishi has not satisfied its burden under Rule 56 to establish that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.

WHEREFORE, MicroAge respectfully requests that the Court deny Mitsubishi's Motion for Partial Summary Judgment and provide such further relief as is just and appropriate.

DATED this 11th day of October, 2002.

SNELL & WILMER L.L.P.

By /s/ JS - #020296
Donald L. Gaffney
Steven D. Jerome
Joe T. Stroud, III
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Attorneys for Plaintiff

COPY of the foregoing mailed this
11th day of October, 2002, to:

Charles M. Stern, Esq.
Katten Muchin Zavis Rosenman
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

/s/ Janice L. Rogalla

1253990.1

- 10 -